Justice Thomas,
with whom The Chief Justice, Justice Scalia, and Justice Alito join, dissenting.
This appeal requires the Court to revisit its decision in Cipollone v. Liggett Group, Inc., 505 U. S. 504 (1992). As in that case, the question before us is whether state-law claims alleging that cigarette manufacturers misled the public about the health effects of cigarettes are pre-empted by the Federal Cigarette Labeling and Advertising Act, as amended in 1969 (Labeling Act or Act). The Labeling Act requires that specific health warnings be placed on all cigarette packaging and advertising, 15 U. S. C. § 1333, in order to eliminate “diverse, nonuniform, and confusing cigarette labeling and advertising regulations with respect to any relationship between smoking and health,” § 1331. To that end, § 5(b) of the Labeling Act pre-empts any “requirement or prohibition based on smoking and health . . . imposed under State law with respect to the advertising or promotion of any cigarettes.” § 1334(b).
Whether § 5(b) pre-empts state common-law claims divided the Court in Cipollone. The plurality opinion found some *92 claims expressly pre-empted and others not, depending on whether “the legal duty that is the predicate of the common-law damages action constitutes a requirement or prohibition based on smoking and health . . . imposed under State law with respect to . . . advertising or promotion.” 505 U. S., at 524 (internal quotation marks omitted; emphasis added). A majority of the Court disagreed with the plurality’s “predicate duty” approach. Id., at 543 (Blackmun, J., concurring in part, concurring in judgment in part, and dissenting in part); id., at 552-554 (Scalia, J., concurring in judgment in part and dissenting in part). In particular, Justice Scalia recognized that the plurality's interpretation of §5(b) created an unworkable test for pre-emption with little or no relationship to the text of the statute. Id., at 544, 555-556. The intervening years have vindicated Justice Scalia’s critical assessment; the lower courts have consistently expressed frustration at the difficulty in applying the Cipollone plurality’s test. Moreover, this Court’s recent pre-emption decisions have undermined, and in some cases overruled, central aspects of the plurality’s atextual approach to express pre-emption generally, Riegel v. Medtronic, Inc., 552 U. S. 312 (2008), and to § 5(b) of the Labeling Act specifically, Lorillard Tobacco Co. v. Reilly, 533 U. S. 525 (2001).
The majority today ignores these problems and adopts the methodology of the Cipollone plurality as governing law. As a consequence, the majority concludes that state-law liability for deceiving purchasers about the health effects of smoking light cigarettes is not a “requirement or prohibition based on smoking and health” under the Labeling Act. The Court’s fidelity to Cipollone is unwise and unnecessary. The Court should instead provide the lower courts with a clear test that advances Congress’ stated goals by interpreting § 5(b) to expressly pre-empt any claim that “imposes an obligation ... because of the effect of smoking upon health.” Cipollone, supra, at 554 (opinion of Scalia, J.).
*93 Respondents’ lawsuit under the Maine Unfair Trade Practices Act (MUTPA), Me. Rev. Stat. Ann., Tit. 5, § 207 (Supp. 2008), is expressly pre-empted under § 5(b) of the Labeling Act. The civil action is premised on the allegation that the cigarette manufacturers misled respondents into believing that smoking light cigarettes would be healthier for them than smoking regular cigarettes. A judgment in respondents’ favor will thus result in a “requirement” that petitioners represent the effects of smoking on health in a particular way in their advertising and promotion of light cigarettes. Because liability in this case is thereby premised on the effect of smoking on health, I would hold that respondents’ state-law claims are expressly pre-empted by §5(b) of the Labeling Act. I respectfully dissent.
I
In Cipollone, a smoker and her spouse brought state common-law claims for fraud, breach of warranty, and failure to warn against cigarette manufacturers for their alleged failure to adequately disclose the health risks of smoking. 505 U. S., at 509. As here, the cigarette manufacturer asserted that the claims were pre-empted by §5(b) of the Labeling Act.
In deciding the case, the Court could not agree on the meaning of the Labeling Act’s express pre-emption provision. It produced three separate opinions, none of which reflected the views of a majority of Justices. Relying heavily on a “presumption against the pre-emption of state police power regulations,” id., at 518, a plurality opinion by Justice Stevens settled on a “narrow reading” of the Labeling Act that tested § 5(b)’s pre-emptive effect under a claim-by-claim approach, id., at 524. This approach considered each state-law claim and asked whether it is predicated “on a duty ‘based on smoking and health.’ ” Id., at 528; see also id., at 524. If so, the claim is pre-empted. Id., at 524, 528. If, *94 however, the claim is predicated on a “more general obligation” under state law, it may proceed. Id., at 528-529.
Applying a test that it conceded lacked “theoretical elegance,” id., at 530, n. 27, the plurality held that the failure-to-warn claims were pre-empted “to the extent that those claims rel[ied] on omissions or inclusions in . . . advertising or promotions” of cigarettes. Id., at 531. The same was true for one of the fraud claims, which alleged that the cigarette manufacturers had used their advertising to neutralize the federally required warning labels. Id., at 527-528. The plurality determined that these claims were “predicated on a state-law prohibition against statements . . . that tend to minimize the health hazards associated with smoking.” Id., at 527. Thus, according to the plurality, these state-law claims sought recovery under the theory that the cigarette manufacturer breached a duty based on smoking or health. But the plurality found that the other fraud claim, which alleged misrepresentation or concealment of a material fact, was not pre-empted because it was based on a more general state-law obligation: “the duty not to deceive.” Id., at 528-529.
Justice Blackmun, writing for three Justices, departed from the plurality on the antecedent question whether the Labeling Act pre-empted state common-law damages claims at all. Id., at 535-542 (opinion, joined by Kennedy and Souter, JJ., concurring in part, concurring in judgment in part, and dissenting in part). He concluded that the phrase “ ‘State law’ ” in § 5(b) referred only to “positive enactments such as statutes and regulations.” Id., at 535. But Justice Blackmun specifically noted that even if state common-law claims were within the scope of the Labeling Act, he could not join the plurality’s claim-by-claim approach because he “perceive[d] no principled basis for many of the plurality’s asserted distinctions among the common-law claims.” Id., at 543. Justice Blackmun wrote that Congress could not have “intended to create such a hodgepodge of allowed and *95 disallowed claims when it amended the pre-emption provision in 1970,” and lamented the “difficulty lower courts w[ould] encounter in attempting to implement” the plurality’s test. Id., at 543-544.
Justice Scalia, writing for two Justices, also faulted the plurality for its claim-by-claim approach. Id., at 544-556 (opinion, joined by Thomas, J., concurring in judgment in part and dissenting in part). Although he agreed with the plurality that the phrase “ ‘State law’ ” in § 5(b) encompassed state common-law claims as well as state statutes and regulations, id., at 548-549, Justice Scalia objected to the plurality’s invocation of a presumption against pre-emption to narrowly interpret § 5(b), id., at 544, 545-547. Because Congress had expressed its intent to pre-empt state law by enacting § 5(b), the Court’s “responsibility [was] to apply to the text ordinary principles of statutory construction.” Id., at 545.[1] By employing its “newly crafted doctrine of narrow construction,” Justice Scalia wrote, the plurality arrived at a cramped and unnatural construction of § 5(b) that failed to give effect to the statutory text. Id., at 544-548.
Applying “ordinary principles” of statutory construction, id., at 548, Justice Scalia determined that the proper test for pre-emption of state-law claims under § 5(b) was far less complicated than the plurality’s claim-by-claim approach. As he explained, “[o]nce one is forced to select a consistent methodology for evaluating whether a given legal duty is ‘based on smoking and health,’ it becomes obvious that the methodology must focus not upon the ultimate source of the duty . . . but upon its proximate application.” Id., at 553. *96 This “proximate application” test, therefore, focuses not on the state-law duty invoked by the plaintiff, but on the effect of the suit on the cigarette manufacturer’s conduct — i. e., the “requirement” or “prohibition” that would be imposed under state law. Put simply, if, “whatever the source of the duty, [the claim] imposes an obligation ... because of the effect of smoking upon health,” it is pre-empted. Id., at 554; see also id., at 555 (“The test for pre-emption in this setting should be one of practical compulsion, i. e., whether the law practically compels the manufacturers to engage in behavior that Congress has barred the States from prescribing directly”). Justice Scalia also seconded Justice Blackmun’s concern that the lower courts would find the plurality’s distinctions between materially identical state-law claims to be incapable of application: “A disposition that raises more questions than it answers does not serve the country well.” Id., at 556.
II
Sixteen years later, we must confront Cipollone to resolve the question presented in this case: whether respondents’ class-action claims for fraudulent marketing under the MUTPA are pre-empted by § 5(b) of the Labeling Act. The majority adheres to Cipollone because it “remain[s] persuaded” that the plurality’s construction of §5(b) was “‘fair.’” Ante, at 84. I disagree. The Court should discard the Cipollone plurality’s ill-conceived predicate-duty approach and replace it with Justice Scalia’s far more workable and textually sound “proximate application” test.
The majority does not assert that the Cipollone plurality opinion is binding precedent, and rightly so. Because the “plurality opinion ... did not represent the views of a majority of the Court, we are not bound by its reasoning.” CTS Corp. v. Dynamics Corp. of America, 481 U. S. 69, 81 (1987) (footnote omitted). At most, Cipollone is a “point of reference for further discussion.” Texas v. Brown, 460 U. S. 730, 737 (1983) (plurality opinion). But even if the plurality opin *97 ion had some force beyond its mere persuasive value, it nevertheless should be abandoned. It is unworkable; it has been overtaken by more recent decisions of this Court; and it cannot be reconciled with a commonsense reading of the text of § 5(b).
A
As predicted by a majority of the Justices in Cipollone, the plurality opinion’s claim-by-claim approach has proved unworkable in the lower federal courts and state courts. The District Court in this case properly observed that “courts remain divided about what the decision means and how to apply it” and that “Cipollone’s distinctions, though clear in theory, defy clear application.” 436 F. Supp. 2d 132, 142 (Me. 2006). Other courts have expressed similar frustration with the Cipollone framework. See, e. g., Glassner v. R. J. Reynolds Tobacco Co., 223 F. 3d 343, 348 (CA6 2000) (“Applying the plurality opinion in Cipollone to the Complaint in the present case is no easy task”); Huddleston v. R. J. Reynolds Tobacco Co., 66 F. Supp. 2d 1370, 1380 (ND Ga. 1999) (“It would be an understatement to say that it is difficult to apply the plurality opinion in Cipollone to the Amended Complaint in this case. It is an impossibility”); In re Welding Fume Prods. Liability Litigation, 364 F. Supp. 2d 669, 681, n. 13 (ND Ohio 2005) (“[I]n Cipollone, the Supreme Court. . . delivered a fractured plurality opinion that is not easy to comprehend”); Whiteley v. Philip Morris, Inc., 117 Cal. App. 4th 635, 669-670, 11 Cal. Rptr. 3d 807, 835-836 (2004) (“[Cipollone is] ‘difficult’... due to the inherent contradiction at the core of the case”); Mangini v. R. J. Reynolds Tobacco Co., 21 Cal. Rptr. 2d 232, 244 (Cal. App. 1993) (officially depublished) (“Cipollone draws no bright lines amenable to easy application”), aff’d, 7 Cal. 4th 1057, 875 P. 2d 73 (1994).
The Court should not retain an interpretative test that has proved incapable of implementation. “[T]he mischievous consequences to litigants and courts alike from the perpetua *98 tion of an unworkable rule are too great.” Swift & Co. v. Wickham, 382 U. S. 111, 116 (1965); Federal Election Comm’n v. Wisconsin Right to Life, Inc., 551 U. S. 449, 501 (2007) (Scalia, J., concurring in part and concurring in judgment) (“Stare decisis considerations carry little weight when an erroneous ‘governing decisio[n]’ has created an ‘unworkable’ legal regime” (quoting Payne v. Tennessee, 501 U. S. 808, 827 (1991))). We owe far more to the lower courts, which depend on this Court’s guidance, and to litigants, who must conform their actions to the Court’s interpretation of federal law. The Cipollone plurality’s test for pre-emption under § 5(b) should be abandoned for this reason alone.
B
Furthermore, in the years since Cipollone was decided, this Court has altered its doctrinal approach to express preemption. The Cipollone plurality justified what it described as the “theoretical [injelegance” of its construction of § 5(b) by relying on the presumption against pre-emption, which, it argued, required a narrow, but “fair,” construction of the statute. 505 U. S., at 530, n. 27. See, e. g., id., at 518 (majority opinion) (“This presumption reinforces the appropriateness of a narrow reading of §5”); id., at 523 (plurality opinion) (“[W]e must. . . narrowly construe the precise language of § 5(b)”); id., at 524 (§ 5(b) must be given “a fair but narrow reading”); id., at 529 (“[W]e conclude that the phrase ‘based on smoking and health’ fairly but narrowly construed does not encompass the more general duty not to make fraudulent statements”). Of course, as Justice Scalia explained, there was nothing “fair” about imposing an artificially narrow construction on the Labeling Act’s pre-emption provision. See id., at 545 (opinion concurring in judgment in part and dissenting in part) (explaining that the presumption against pre-emption “dissolves once there is conclusive evidence of intent to pre-empt in the express words of the statute itself”).
*99 Since Cipollone, the Court’s reliance on the presumption against pre-emption has waned in the express pre-emption context. In 2002, for example, the Court unanimously explained that the “task of statutory construction must in the first instance focus on the plain wording of the [express preemption] clause, which necessarily contains the best evidence of Congress’ pre-emptive intent.” Sprietsma v. Mercury Marine, 537 U. S. 51, 62-63 (internal quotation marks omitted). Without referring to any presumption against preemption, the Court decided that the Federal Boat Safety Act of 1971’s express pre-emption provision did not pre-empt state-law claims. Id., at 62-64. Most other decisions since Cipollone also have refrained from invoking the presumption in the context of express pre-emption. See, e. g., Rowe v. New Hampshire Motor Transp. Assn., 552 U. S. 364 (2008); Engine Mfrs. Assn. v. South Coast Air Quality Management Disst., 541 U. S. 246 (2004); Buckman Co. v. Plaintiffs’ Legal Comm., 531 U. S. 341 (2001); United States v. Locke, 529 U. S. 89 (2000); Geier v. American Honda Motor Co., 529 U. S. 861 (2000).
The Court has invoked the presumption sporadically during this timeframe. As the majority notes, ante, at 77, Medtronic, Inc. v. Lohr, 518 U. S. 470 (1996), applied the presumption against pre-emption in deciding that the federal manufacturing and labeling requirements of the Medical Device Amendments of 1976 (MDA) did not pre-empt state common-law claims. Id., at 500-501. Like Cipollone before it, Lohr produced a fractured decision featuring three opinions. 518 U. S., at 474 (opinion of Stevens, J.); id., at 503 (Breyer, J., concurring in part and concurring in judgment); id., at 509 (O’Connor, J., concurring in part and dissenting in part). And, like Cipollone, Lohr’s approach to express pre-emption predates the Court’s recent jurisprudence on the topic. In fact, this Court last year revisited the pre-emption provision of the MDA, 21 U. S. C. *100 §360k(a)(l), and did not employ any presumption against pre-emption. Riegel, 552 U. S. 312. See infra, at 101-102.[2]
More recently, in Reilly, 533 U. S. 525, a case revisiting the meaning of § 5(b) of the Labeling Act, the Court briefly alluded to the presumption, but did not rely on it to reach its decision. See id., at 541-542, 546-551. Indeed, the Court’s cursory treatment of the presumption in Reilly stands in stark contrast to the First Circuit decision it reversed; the First Circuit relied heavily on the “full force” of the presumption to determine that the regulations at issue were not pre-empted. See Consolidated Cigar Corp. v. Reilly, 218 F. 3d 30, 38-41 (2000). This Court, in overturning that judgment, declined to employ the presumption in its construction of § 5(b). See Reilly, 533 U. S., at 546-551. Justice Stevens highlighted this very point in dissent, arguing that if the presumption had been faithfully applied, the result would have been different. Id., at 591-593 (opinion concurring in part, concurring in judgment in part, and dissenting in part).
The majority also relies on Bates v. Dow Agrosciences LLC, 544 U. S. 431 (2005), where the presumption was again mentioned, but only in dicta. As in Reilly, the presumption did not drive the Court’s construction of the statute at issue. 544 U. S., at 449 (explaining that the presumption meant just that the holding of no pre-emption would have been the same *101 “even if [respondent’s] alternative [construction of the statute] were just as plausible as our reading of [the statute’s] text”); see also id., at 457 (Thomas, J., concurring in judgment in part and dissenting in part) (agreeing that the case should be vacated and remanded and reiterating that the “presumption does not apply ... when Congress has included within a statute an express pre-emption provision”). At bottom, although the Court’s treatment of the presumption against pre-emption has not been uniform, the Court’s express pre-emption cases since Cipollone have marked a retreat from reliance on it to distort the statutory text.
If any doubt remained, it was eliminated last Term in Riegel. The question in Riegel, as noted above, was whether the MDA expressly pre-empts state common-law claims “challenging the safety and effectiveness of a medical device given premarket approval by the Food and Drug Administration.” 552 U. S., at 315. Over the dissent of one Justice, the Court held that the state-law claims were pre-empted because the requirements the plaintiffs sought to impose were ‘“different from, or in addition to, any requirement applicable ... to the device’ ” under federal law. Id., at 316 (quoting 21 U. S. C. § 360k(a)(l)). The Court interpreted the statute without reference to the presumption or any perceived need to impose a narrow construction on the provision in order to protect the police power of the States. Rather, the Court simply construed the MDA in accordance with ordinary principles of statutory construction.
This was not accidental. The dissent focused on the Court’s refusal to invoke the presumption in order to save the state-law claims from pre-emption. 552 U. S., at 334-335 (opinion of Ginsbtjrg, J.). The dissent was adamant that “[f]ederal laws containing a preemption clause do not automatically escape the presumption against preemption.” Id., at 334; id., at 335 (“Where the text of a preemption clause is open to more than one plausible reading, courts ordinarily ‘accept the reading that disfavors pre-emption’” (quoting *102 Bates, supra, at 449)). In accordance with the presumption, the dissent would have found the state-law claims under review to fall beyond the reach of the MDA’s express preemption provision. 552 U. S., at 334-335; see also id., at 338, n. 8; id., at 339, n. 9 (rejecting the majority’s construction of §360h(d) because “the presumption against preemption [is] operative even in construing a preemption clause”). Given the dissent’s clear call for the use of the presumption against pre-emption, the Court’s decision not to invoke it was necessarily a rejection of any role for the presumption in construing the statute.
Justice Stevens also declined to invoke the presumption in his opinion. Id., at 330-333 (opinion concurring in part and concurring in judgment). In his view, the “significance of the pre-emption provision in the [MDA] was not fully appreciated until many years after it was enacted” and, therefore, it is “a statute whose text and general objective cover territory not actually envisioned by its authors.” Id., at 330-331. But Justice Stevens’ opinion in Riegel — unlike the majority opinion here, the plurality opinion in Cipollone, and the dissenting opinion in Riegel — did not invoke the presumption to bend the text of the statute to meet the perceived purpose of Congress. Instead, Justice Stevens correctly found that “ ‘it is ultimately the provisions of our laws rather than the principal concerns of our legislators by which we are governed.’ ” 552 U. S., at 331 (quoting Oncale v. Sundowner Offshore Services, Inc., 523 U. S. 75, 79 (1998)).
In light of Riegel, there is no authority for invoking the presumption against pre-emption in express pre-emption cases. The majority here thus turns to Lohr to revive the presumption and, in turn, to justify its restrictive reading of the Labeling Act’s express pre-emption provision. But, as Riegel plainly shows, the Court is no longer willing to unreasonably interpret expressly pre-emptive federal laws in the name of “ ‘congressional purpose,’ ” ante, at 84, or because “Congress has legislated in a field traditionally occupied by *103 the States,” ante, at 77. The text of the statute must control.
Riegel also undermined Cipollone in an even more fundamental way: It conclusively decided that a common-law cause of action imposes a state-law “ ‘requirement]’ ” that may be pre-empted by federal law. 552 U. S., at 324-325 (“Absent other indication, reference to a State’s ‘requirements’ includes its common-law duties. . . . Indeed, one would think that tort law, applied by juries under a negligence or strict-liability standard, is less deserving of preservation [than regulatory legislation]”). Justice Blackmun’s contrary interpretation of § 5(b) of the Labeling Act in Cipollone, 505 U. S., at 538-539 (opinion concurring in part, concurring in judgment in part, and dissenting in part), which provided the votes necessary for the judgment, thus is no longer tenable. In light of Riegel’s rejection of the presumption against preemption relied on by the plurality, as well as the definition of “requirements” relied on in Justice Blackmun’s opinion, Cipollone’s approach to express pre-emption is nothing more than “a remnant of abandoned doctrine.” Planned Parenthood of Southeastern Pa. v. Casey, 505 U. S. 833, 855 (1992).
C
The Cipollone plurality’s reading of §5(b) of the Labeling Act was further undermined by this Court’s decision in Reilly, 533 U. S. 525. There, the Court confronted regulations imposed by the Massachusetts attorney general on the location of tobacco advertising pursuant to the Commonwealth’s unfair trade practices statute. Id., at 533-536. The Court found the regulations — to the extent they applied to cigarettes — expressly pre-empted because, although Massachusetts remained free to enact “generally applicable zoning restrictions,” its imposition of “special requirements or prohibitions ‘based on smoking and health’ ‘with respect to the advertising or promotion’ of cigarettes” fell within the ambit of § 5(b)’s pre-emptive sweep. Id., at 551.
*104 Reilly did not ignore Cipollone. It cited the plurality-opinion extensively in its discussion of the basic history and text of the Labeling Act. 533 U. S., at 540-546. But in analyzing whether the regulations enacted by the Massachusetts attorney general were expressly pre-empted, the Court was silent about Cipollone. 533 U. S., at 546-551. Unlike the District Court, which saw “the central question for purposes of pre-emption [as] whether the regulations create[d] a predicate legal duty based on smoking and health,” id., at 537, the Court’s substantive examination of the regulations under § 5(b) included no mention of the Cipollone plurality’s “predicate duty” test. See 533 U. S., at 546-551. Instead, the Court disagreed with “the Attorney General’s narrow construction” of the statute’s “ ‘based on smoking and health’ ” language, and concluded that the regulations were preempted because they were “motivated by” and “intertwined with” the concerns about smoking and health. Id., at 547-548.
Reilly, therefore, cannot be reconciled with the Cipollone plurality’s interpretation of § 5(b) of the Labeling Act. The regulations at issue in Reilly were enacted to implement a Massachusetts state law imposing a duty against unfair and deceptive trade practices — the same predicate duty asserted under the MUTPA in this case. 533 U. S., at 533. The state-law duty at issue in Reilly was no less general than the state-law duty at issue in this case or the state-law fraud claims confronted in Cipollone. Compare Mass. Gen. Laws, ch. 93A, § 2(a) (West 1996) (“Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful”), with Me. Rev. Stat. Ann., Tit. 5, §207 (Supp. 2008) (“Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are declared unlawful”), and Cipollone, supra, at 528 (explaining that the “predicate” of the plaintiff’s fraudulent misrepresentation claim was “a state-law duty not to make false statements of mate *105 rial fact or to conceal such facts”)- Faithful application of the Cipollone plurality opinion, therefore, would have required the Court in Reilly to uphold the regulations. Indeed, Justice Stevens argued as much in his dissent. 533 U. S., at 597 (opinion concurring in part, concurring in judgment in part, and dissenting in part) (noting that “[n]ary a word in any of the three Cipollone opinions supports the thesis that § 5 should be interpreted to pre-empt state regulation of the location of signs advertising cigarettes”).
And yet, the majority today finds that Reilly and Cipollone are perfectly compatible. It contends that, although the regulations in question in Reilly “derived from a general deceptive practices statute like the one at issue in this case,” they were pre-empted because they “targeted advertising that tended to promote tobacco use by children instead of prohibiting false or misleading statements.” Ante, at 83. According to the majority, that legal duty contrasts with the regulations here, as “[t]he MUTPA says nothing about either ‘smoking’ or ‘health.’” Ante, at 84; see also ante, at 81. But the Cipollone plurality expressly rejected any distinction between targeted regulations like those in Reilly and general duties imposed by the common law. 505 U. S., at 522. In fact, the general duties underlying the failure-to-warn and warning-neutralization claims in Cipollone — which the plurality found to be pre-empted — say nothing about smoking and health. Id., at 524; see also id., at 553 (Scalia, J., concurring in judgment in part and dissenting in part) (noting that the duty to warn about a product’s dangers was not “specifically crafted with an eye toward ‘smoking and health’”).
Accordingly, Reilly is better understood as establishing that even a general duty can impose requirements or prohibitions based on smoking and health. Reilly weakened the force of the Cipollone plurality’s “predicate duty” approach to the pre-emptive effect of § 5(b) and cast doubt on its continuing utility.
*106 D
Finally, the Cipollone plurality’s approach should be discarded because its “predicate duty” approach is unpersuasive as an initial matter. In considering the warning-neutralization claim, for example, the Cipollone plurality asserted that the claim is predicated on a state-law prohibition against minimizing the health risks associated with smoking. 505 U. S., at 527. The Court today reaffirms this view. Ante, at 81; see also ante, at 84 (describing § 5(b) as expressly pre-empting “rules ... that are based on smoking and health”). But every products liability action, including a failure-to-warn action, applies generally to all products. See Cipollone, 505 U. S., at 553 (opinion of Scalia, J.). Thus, the “duty” or “rule” involved in a failure-to-warn claim is no more specific to smoking and health than is a common-law fraud claim based on the “duty” or “rule” not to use deceptive or misleading trade practices. Yet only for the latter was the Cipollone plurality content to ignore the context in which the claim is asserted. This shifting level of generality was identified as a logical weakness in the original Cipollone plurality decision by a majority of the Court, id., at 543 (Blackmun, J., concurring in part, concurring in judgment in part, and dissenting in part); id., at 553-554 (opinion of Scalia, J.), and it remains equally unconvincing today.
It is therefore unsurprising that the Court’s defense of the plurality’s confusing test is confined to one sentence and a footnote. See ante, at 84 (“While we again acknowledge that our analysis of these claims may lack Theoretical elegance,’ we remain persuaded that it represents ‘a fair understanding of congressional purpose’” (quoting Cipollone, supra, at 529-530, n. 27)); ante, at 81, n. 7. The majority instead argues that this approach “fails to explain why Congress would . . . permiftj cigarette manufacturers to engage in fraudulent advertising.” Ibid. But no explanation is necessary; the text speaks for itself. Congress has preempted only those claims that would impose “requirement[s] *107 or prohibition^] based on smoking and health.” 15 U. S. C. § 1334(b). Thus, if cigarette manufacturers were to falsely advertise their products as “American-made,” or “the official cigarette of Major League Baseball,” state-law claims arising from that wrongful behavior would not be pre-empted.
Furthermore, contrary to the majority’s policy arguments, faithful application of the statutory language does not authorize fraudulent advertising with respect to smoking and health.[3] Any misleading promotional statements for cigarettes remain subject to federal regulatory oversight under the Labeling Act. See § 1336. The relevant question thus is not whether “petitioners will be prohibited from selling as ‘light’ or ‘low tar’ only those cigarettes that are not actually light and do not actually deliver less tar and nicotine.” Ante, at 83, n. 10. Rather, the issue is whether the Labeling Act allows regulators and juries to decide, on a state-by-state basis, whether petitioners’ light and low-tar descriptors were in fact fraudulent, or instead whether §5(b) charged the Federal Government with reaching a comprehensive judgment with respect to this question.
Congress chose a uniform federal standard. Under the Labeling Act, Congress “establish[ed] a comprehensive Federal Program to deal with cigarette labeling and advertising,” 15 U. S. C. § 1331, so that “commerce and the national economy may . . . not [be] impeded by diverse, nonuniform, and confusing cigarette labeling and advertising regulations with respect to any relationship between smoking and health,” § 1331(2)(B).[4] The majority’s distorted interpreta *108 tion of § 5(b) defeats this express congressional purpose, opening the door to an untold number of deceptive-practices lawsuits across the country. The question whether marketing a light cigarette is “‘misrepresentative’” in light of compensatory behavior “would almost certainly be answered differently from State to State.” Cipollone, supra, at 553 (Scalia, J., concurring in judgment in part and dissenting in part). This will inevitably result in the nonuniform imposition of liability for the marketing of light and/or low-tar cigarettes — the precise problem that Congress intended §5(b) to remedy.
In light of these serious flaws in the majority’s approach, even if the Cipollone plurality opinion were binding precedent, the Court “should not hesitate to allow our precedent to yield to the true meaning of an Act of Congress when our statutory precedent is ‘unworkable’ or ‘badly reasoned.’ ” Clark v. Martinez, 543 U. S. 371, 402 (2005) (Thomas, J., dissenting) (quoting Holder v. Hall, 512 U. S. 874, 936 (1994) (Thomas, J., concurring in judgment), in turn quoting Payne, 501 U. S., at 827). Where, as here, there is “confusion following a splintered decision,” that “is itself a reason for reexamining that decision.” Nichols v. United States, 511 U. S. 738, 746 (1994). When a decision of this Court has failed to properly interpret a statute, we should not “place on the shoulders of Congress the burden of the Court’s own error.” Girouard v. United States, 328 U. S. 61, 69-70 (1946).[5]
*109 III
Applying the proper test — i. e., whether a jury verdict on respondents’ claims would “imposte] an obligation” on the. cigarette manufacturer “because of the effect of smoking upon health,” Cipollone, 505 U. S., at 554 (opinion of Scalia, J.), respondents’ state-law claims are expressly pre-empted by § 5(b) of the Labeling Act. Respondents, longtime smokers of Marlboro Lights, claim that they have suffered an injury as a result of petitioners’ decision to advertise these cigarettes as “light” and/or “low-tar and low-nicotine products.” See 436 F. Supp. 2d, at 144-145. They claim that petitioners marketed their cigarettes as “light” and/or “low-tar and low-nicotine products” despite knowledge that light-cigarette smokers would engage in compensatory behavior causing them to inhale at least as much tar and nicotine as smokers of regular cigarettes. Ibid. Respondents thus allege that they were misled into thinking that they were gaining a health advantage by smoking the light cigarettes, ibid., and, as a result, petitioners’ conduct was an “unfair or deceptive ac[t] or practic[e]” under the MUTPA, Me. Rev. Stat. Ann., Tit. 5, §207; 436 F. Supp. 2d, at 133.
Respondents’ claims seek to impose liability on petitioners because of the effect that smoking light cigarettes had on their health. The alleged misrepresentation here — that “light” and “low-tar” cigarettes are not as healthy as advertised — is actionable only because of the effect that smoking light and low-tar cigarettes had on respondents’ health. Otherwise, any alleged misrepresentation about the effect of the cigarettes on health would be immaterial for purposes of the MUTPA and would not be the source of the injuries that provided the impetus for the class-action lawsuit. See State v. Weinschenk, 2005 ME 28, ¶ 17, 868 A. 2d 200, 206 (“An act or practice is deceptive [under the MUTPA] if it is a material representation, omission, act or practice that is likely to mislead consumers acting reasonably under the circumstances” (emphasis added)). Therefore, with this suit, respondents *110 seek to require the cigarette manufacturers to provide additional warnings about compensatory behavior, or to prohibit them from selling these products with the “light” or “low-tar” descriptors. This is exactly the type of lawsuit that is pre-empted by the Labeling Act. Cf. Rowe, 552 U. S., at 372 (finding pre-emption of á Maine regulation of shipping of tobacco products where “[t]he Maine law . . . produces the very effect that the federal law sought to avoid”).
Because the proper test for pre-emption is to look at the factual basis of a complaint to determine if a claim imposes a requirement based on smoking and health, there is no meaningful distinction to be drawn in this case between common-law failure-to-warn claims and claims under the MUTPA.[6] As the majority readily admits, both types of claims impose duties with respect to the same conduct — i. e., the marketing of “light,” “low-tar,” and “low-nicotine” cigarettes. See ante, at 82, n. 9. If the claims arise from identical conduct, the claims impose the same requirement or prohibition with respect to that conduct. And when that allegedly wrongful conduct involves misleading statements about the health effects of smoking a particular brand of cigarette, the liability and resulting requirement or prohibition are, by definition, based on smoking and health.
*111 Finally, at oral argument, respondents argued that their claims do not impose requirements based on smoking and health because the damages they seek to recover are not based on the effect of smoking on their health; rather, respondents are “asking... for the difference in value between a product [they] thought [they] were buying and a product [they] actually bought.” Tr. of Oral Arg. 29. But the requirement or prohibition covered by § 5(b) is created by the imposition of liability for particular conduct — here, the way in which petitioners marketed “light” and “low-tar,” and “low-nicotine” cigarettes — not by the manner in which respondents have chosen to measure their damages. No matter how respondents characterize their damages claim, they have not been injured for purposes of the MUTPA, and thus cannot recover, unless their decision to purchase the cigarettes had a negative effect on their health.
In any event, respondents sought “such injunctive relief as may be appropriate” in this case. App. 42a. The MUTPA specifically authorizes “other equitable relief, including an injunction,” to remedy unfair or deceptive trade practices. Me. Rev. Stat. Ann., Tit. 5, §213(1) (2002). And a court-crafted injunction' prohibiting petitioners from marketing light cigarettes would be no less a requirement or prohibition than the regulations found to be pre-empted in Reilly. In the end, no matter what form the remedy takes, the liability with respect to the specific claim still creates the requirement or prohibition. When that liability is necessarily premised on the effects of smoking on health, as respondents’ claims are here, the civil action is pre-empted by §5(b) of the Labeling Act.
IV
The Court today elects to convert the Cipollone plurality opinion into binding law, notwithstanding its weakened doctrinal foundation, its atextual construction of the statute, and the lower courts’ inability to apply its methodology. The resulting confusion about the nature of a claim’s “predicate *112 duty” and inevitable disagreement in the lower courts as to what type of representations are “material” and “misleading” will have the perverse effect of increasing the nonuniformity of state regulation of cigarette advertising, the exact problem that Congress intended § 5(b) to remedy. It may even force us to yet again revisit the Court’s interpretation of the Labeling Act. Because I believe that respondents’ claims are pre-empted under § 5(b) of the Labeling Act, I respectfully dissent.

 Justice Scalia also criticized the plurality for announcing a new rule that the enactment of an express pre-emption clause eliminates any consideration of implied pre-emption. He explained that this new rule created mischief because, when combined with the presumption against preemption, it placed a heavy burden of exactitude on Congress when it wishes to say anything about pre-emption. See Cipollone, 505 U. S., at 547-548.

 Also, as in Cipollone v. Liggett Group, Inc., 505 U. S. 504 (1992), the fractured decision in Lohr was a source of confusion for the lower courts. See Kemp v. Medtronic, Inc., 231 F. 3d 216, 224 (CA6 2000) (“The various courts of appeals that have confronted issues of preemption arising under the MDA have struggled mightily with Lohr’s language in the effort to discern its holding”); see also Martin v. Medtronic, Inc., 254 F. 3d 573, 579 (CA5 2001) (“Because only parts of Justice Stevens’s opinion commanded a majority, extracting the final meaning of Lohr is no easy task. ... Although Justice Breyer’s concurrence very specifically disavows the view that common law duties cannot provide substantive requirements for the purpose of preemption, neither his concurrence nor the plurality opinion offers much help to us in developing the point”). The confusion was cleared up in Riegel. See infra, at 101-103.

 The majority’s policy-based attack could just as easily be leveled against its own determination that the Labeling Act pre-empts failure-to-warn claims. But just as there is no basis in fact or law to contend that the Labeling Act encourages the marketing of hazardous products without adequate warning labels, ante, at 81-82, n. 8, there is no basis to contend that the text of the Labeling Act permits fraudulent advertising.

 The majority contends that the relatively constrained enforcement power of the Federal Trade Commission (FTC) in 1970 undermines any argument that Congress intended the Labeling Act to prevent States from *108 regulating deceptive advertising and marketing of cigarettes. Ante, at 79-80, n. 6. I am unwilling to rely on the majority’s perception of the relative power of the FTC in 1970 to ignore Congress’ stated purpose in enacting the Labeling Act and the plain meaning of the Act’s express pre-emption provision.

 The United States, in its amicus brief and at oral argument, conspicuously declined to address express pre-emption or defend the Cipollone opinion’s reasoning. See Brief for United States as Amicus Curiae 14-33. Instead, it addressed only the question of implied pre-emption, an issue I do not reach because of my resolution of the question on express pre-emption.

 The majority’s observation that ho warning-neutralization claim is at issue in this case, ante, at 82, n. 9, misses the point. The principal weakness in the Cipollone plurality’s logic is not its distinction between claims for warning neutralization and claims for fraud. It is the fact that the predicate duty underlying New Jersey’s products liability law, from which the majority now claims the warning-neutralization claim derived, see ante, at 81-82, n. 8, was no more specific to smoking and health than the predicate duty underlying the fraud claim, see Cipollone, 505 U. S., at 552-553 (opinion of Scalia, J.) (“Each duty transcends the relationship between the cigarette companies and cigarette smokers; neither duty was specifically crafted with an eye toward ‘smoking and health’ ”); id., at 543 (opinion of Blackmun, J.); see also supra, at 106. Thus, the products liability and the fraud claims must stand or fall together. The majority’s refusal to address the logical inconsistency of its approach remains as glaring today as it was in Cipollone.